## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Students for Life at Ball State University, Julia Weis, Renee Harding, and Nora Hopf,<br><br>Plaintiffs,<br><br>    v.<br><br>Rick Hall, E. Renae Conley, Thomas C. Bracken, Matt Momper, R. Wayne Estopinal, Brian Gallagher, Jean Ann Harcourt, Mike McDaniel, and Marlene Jacocks, each individually and each in his or her official capacity as members of the Board of Trustees of Ball State University; Geoffrey S. Mearns, President of Ball State University, in his official and individual capacities; Kay Bales, Vice President for Student Affairs and Enrollment Services and Dean of Students, in her individual and official capacities; Jaquelyn Buckrop, Melissa Ginotti, Rob Marvin, Brittanie Middleton, and Ro-Anne Royer Engle, each individually and each in his or her official capacity as members of the Student Activity Fee Committee at Ball State University;<br><br>        Defendants. | **DEMAND FOR JURY TRIAL**<br><br>Case No.  1:18-cv-1799 |

## VERIFIED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES

Plaintiffs Students for Life at Ball State University (hereinafter "Students for Life at BSU"), Julia Weis, Renee Harding, and Nora Hopf (hereinafter "individual Plaintiffs"), by and through counsel and for their verified complaint against Defendants, hereby allege and state the following:

## INTRODUCTION

1.     Students for Life at BSU and its members requested approximately $300 from the pool of mandatory student fees its members paid in order to educate students regarding pro-life issues

1

and provide resources to pregnant and parenting students on the campus of Ball State University. The University distributes those fees to organizations such as Feminists for Action, the Secular Student Alliance, and SPECTRUM. Accordingly, Students for Life at BSU members were shocked when their request for funding the pregnancy resource initiative was denied. The University stated the "Student Activity Fee Guidelines" prohibits funding to "[a]ny Organization which engages in activities, advocacy, or speech in order to advance a particular political interest, religion, religious faith, or ideology."

2.      The University distributes the mandatory student fees to many organizations that advocate for political, religious, and ideological views, but it excludes Students for Life at BSU and its members from this forum.

3.      The cornerstone of higher education is the ability of students to participate in the "marketplace of ideas" on campus. And the Constitution and principles of free speech require that that marketplace is free to all viewpoints. In the context of funding student organizations from mandatory student activity fees, the First Amendment dictates that the university can collect such a mandatory student activity fee only if it proactively ensures that those funds are allocated in a viewpoint-neutral manner, bridling the discretion of those who allocate the funds. In violation of these principles, Ball State University (BSU) unconstitutionally compels Ms. Hopf, Ms. Weis, Ms. Harding, and the other student members of Students for Life at BSU to subsidize speech that they disagree with through its assessment of a mandatory Student Activity Fee. The University distributes those funds under a policy which facially and as applied to Students for Life at BSU discriminates against religious, political, and ideological viewpoints, and grants the Student Activity Fee Committee unbridled discretion to allocate these funds to favor popular views and to exclude unpopular views.

4.      This action is based on the denial of Plaintiffs' fundamental rights to free speech and equal protection of the laws under the United States Constitution. The policies and actions detailed below are challenged on their face and as applied to Plaintiffs. Defendants' policies and actions have deprived and will continue to deprive Plaintiffs of their paramount rights and guarantees under the United States Constitution. Each and every act of Defendants alleged herein was committed by Defendants, each and every one of them, under the color of state law and authority.

## JURISDICTION AND VENUE

5.      This action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and 42 U.S.C. §§ 1983 *et seq*.

6.      This Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343.

7.      This Court has jurisdiction to award the requested declaratory relief under 28 U.S.C. §§ 2201-02 and Federal Rule of Civil Procedure 57.

8.      This Court has jurisdiction to award the requested injunctive relief under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65.

9.      This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343.

10.     This Court has jurisdiction to award reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in this district and/or the acts described in this Complaint occurred in this district.

## PLAINTIFFS

12.     Plaintiff Students for Life at BSU is an unincorporated expressive student association comprised of Ball State University students.

13.     Students for Life at BSU is a Recognized Student Organization at the University. It is a student-led, non-partisan, pro-life expressive student organization and is not affiliated with any particular political party or religious belief.

14.     Every student member of Students for Life at BSU pays mandatory Student Activity Fees at the University.

15.     Students for Life at BSU and each of its members is entitled to viewpoint-neutral access to and allocation of mandatory Student Activity Fees collected by the University.

16.     Part of Students for Life at BSU's mission is to be an expressive student organization at the University and to protect its members' constitutional rights on campus.

17.     Specifically, Students for Life at BSU's mission statement is as follows:

> Students for Life at Ball State University is committed to the protection of all human life; from conception until natural death. We strive to educate our members and the Ball State University community about why we value life in all its forms. We strive to respond with love, compassion, and support to those who suffer from restrictions of life. Students for Life at Ball State University does not condone violence toward those who oppose the pro-life viewpoint. Students for Life at BSU seeks to obey all laws and be peaceful while expressing its opinions and exercising the right to free speech.

18.     Students for Life at BSU desires to obtain viewpoint-neutral access to the mandatory Student Activity Fee funding, and for its members not to be compelled to pay for others' expression in a system that permits viewpoint discriminatory allocation of those funds to views they oppose.

19.     Students for Life at BSU brings this suit on behalf of itself as a recognized student organization at the University and on behalf of its individual student members. All of its members are compelled to pay mandatory student fees for the expression of viewpoints they oppose and are denied viewpoint-neutral access to the University's organizational funding mechanism.

20.     Plaintiff Julia Weis is a member of Students for Life at BSU and a full-time student at the University.

21.     Ms. Weis pays the mandatory Student Activity Fees at the University and has paid this fee every semester in which she has been enrolled.

22.     Mandatory Student Activity Fees paid by Ms. Weis have been and will be allocated to student groups for causes to which she objects, including, on information and belief, advocacy for the funding of abortion that are against her own pro-life views.

23.     Plaintiff Renee Harding is a member of Students for Life at BSU and a full-time student at the University.

24.     Ms. Harding pays the mandatory Student Activity Fees at the University and has paid this fee every semester in which she has been enrolled.

25.     Mandatory Student Activity Fees paid by Ms. Harding have been and will be allocated to student groups for causes to which she objects, including, on information and belief, advocacy for the funding of abortion that are against her own pro-life views.

26.     Plaintiff Nora Hopf was a member of Students for Life at BSU and a full-time student at the University from 2014-2018.

27.     Ms. Hopf was the president of Students for Life at BSU when the events giving rise to this lawsuit occurred.

28.     Ms. Hopf paid the mandatory Student Activity Fees at the University every semester in which she was enrolled.

29.     Mandatory Student Activity Fees paid by Ms. Hopf were allocated to student groups for causes to which she objects, including, on information and belief, advocacy for the funding of abortion that are against her own pro-life views.

**DEFENDANTS**

30.     Defendants Rick Hall, E. Renae Conley, Thomas C. Bracken, Matt Momper, R. Wayne Estopinal, Brian Gallagher, Jean Ann Harcourt, Mike McDaniel, and Marlene Jacocks are, and were at all times relevant to this Complaint, voting members of the Ball State University Board of Trustees (herein collectively, the "Board Defendants"), a public university organized and existing under the laws of the State of Indiana.

31.     The Board Defendants are authorized by law to, and do, manage, control, and operate Ball State University either directly or by delegated authority.

32.     The Board Defendants are authorized by law to hire and supervise all officers and employees of Ball State University.

33.     The Board Defendants are responsible for, among other things, the adoption and/or authorization of policies that govern mandatory fees at the University, including the Student Activity Fee Guidelines and related procedures challenged herein (hereinafter all of Defendants' policies and regulations governing mandatory student fees will be collectively referred to as the "Student Activity Fee Policy"), and their application to Plaintiffs.

34.     The Board Defendants have acquiesced in, sanctioned, and supported the actions of all Defendants complained of herein, including the enforcement of the Student Activity Fee Policy and related procedures regarding allocation of mandatory student fees to recognized student organizations.

35.     The Board Defendants participate in the assessment and allocation of student fees by granting Defendant Mearns the authority to assess and allocate the amount of mandatory student fees that the University will collect each year, including for distribution to student organizations.

36.     Each Board Defendant is sued in his or her official and individual capacities.

37.     Defendant Geoffrey S. Mearns is, and was at all times relevant to this Complaint, President of Ball State University.

38.     Defendant Mearns is responsible for the day-to-day operation of the University, including policies related to the distribution of student fees.

39.     Defendant Mearns is responsible for the establishment, oversight, and adjustment of mandatory student fees.

40.     Defendant Mearns is responsible for the supervision of all officers and employees of the University that are charged with enforcement of the Student Activity Fee Policy.

41.     Defendant Mearns has authorized the collection of mandatory student fees that are distributed to student organizations.

42.     Defendant Mearns has authorized, either directly or by delegated authority, the implementation of the Student Activity Fee Policy challenged herein.

43.     Defendant Mearns has enforced the Student Activity Fee Policy in a viewpoint discriminatory manner because he has failed to award Student Activity Fee funding in a viewpoint neutral manner and has failed to stop University officials, including the other defendants, from allocating Student Activity Fee funding in a viewpoint-discriminatory manner, including denying funding to Students for Life at BSU.

44.     Defendant Mearns is sued in his official and individual capacities.

45.     Defendant Kay Bales is, and was at all times relevant to this Complaint, the Vice President for Student Affairs and Enrollment Services, and Dean of Students at Ball State University.

46.     Defendant Bales is responsible for direction and oversight of the office of Student Life, and the oversight of student organization recognition and funding.

47.     Defendant Bales is responsible for developing, implementing, and enforcing policies for the regulation of student organizations and the distribution of student activity fees, including the Student Activity Fee Policy.

48.     Defendant Bales has enforced the Student Activity Fee Policy in a viewpoint discriminatory manner because she has failed to award Student Activity Fee funding in a viewpoint neutral manner and has failed to stop University officials, including the other defendants, from allocating Student Activity Fee funding in a viewpoint discriminatory manner, including denying funding to Students for Life at BSU.

49.     Defendant Bales is sued in her official and individual capacities.

50.     Defendants Jaquelyn Buckrop, Melissa Ginotti, Rob Marvin, Brittanie Middleton, and Ro-Anne Royer Engle are, and at all times relevant to this complaint were, voting members of the Student Activity Fee Committee at Ball State University (hereinafter "Committee Defendants").[1]

51.     On information and belief, the Student Activity Fee Committee was created by and operates under the auspices of the Department of Student Life.

52.     The Committee Defendants are responsible for the enforcement and application of the Student Activity Fee Policy challenged herein.

53.     The Committee Defendants enforced the Student Activity Fee Policy in a viewpoint discriminatory manner because they failed to award Student Activity Fee funding in a viewpoint neutral manner, including denying funding to Students for Life at BSU.

54.     Each Committee Defendant is sued in his or her official and individual capacities.

---

[1] The two student members of the Student Activity Fee Committee are not included because University officials are ultimately responsible for the challenged policies and their enforcement.

## FACTUAL BACKGROUND

**I.      Defendants' facially discriminatory student organization funding system**

**A.  Mandatory student fees**

55.      The Board Defendants are authorized by state law to establish mandatory fees for students at Ball State University.

56.      The Board Defendants, and/or employees under their control and supervision, maintain and enforce the Student Activity Fee Policy that requires students to pay mandatory student services fees that are separate and distinct from tuition.

57.      Mandatory student services fees for full-time students who are Indiana residents were approximately $1,318 for the 2017-2018 academic year.

58.      Individual plaintiffs and other members of Students for Life at BSU paid and will pay the student services fee each semester they are enrolled at Ball State University.

59.      A portion of the mandatory student services fees are pooled for distribution to student organizations (hereinafter referred to as "Student Activity Fees").

60.      As detailed in subsequent paragraphs, Plaintiffs challenge, facially and as-applied, the Defendants' Student Activity Fee Policy because:

     a.   The policy grants Defendants unbridled discretion to allocate mandatory Student Activity Fees in a viewpoint discriminatory manner.

     b.   The policy does not include an exhaustive list of objective criteria, factors, or standards to guide Defendants in allocating mandatory Student Activity Fees to fund expressive activity in a viewpoint neutral manner.

     c.   The policy does not provide for an appeals process if a student organization's request for funding is denied.

    d.   Defendants apply the policy to favor the speech of the twelve student groups listed in the Student Activity Fee Guidelines (attached as Exhibit 1) and disfavor alternative viewpoints offered by student organizations like Students for Life at BSU.

    e.   Defendants apply the policy to fund ideological expression that Defendants approve, but refuse to fund ideological expression of which Defendants do not approve.

    f.   Defendants applied the policy to deny Students for Life at BSU's request for funding for a Pregnant on Campus Initiative to provide resource guides to pregnant and parenting students.

    g.   Defendants applied the policy to require individual Plaintiffs and other members of Students for Life at BSU to pay mandatory Student Activity Fees pursuant to a viewpoint-discriminatory policy.

    h.   The policy facially discriminates against religious, political, and "ideological" viewpoints.

**B.  Viewpoint discriminatory distribution of Student Activity Fees**

61.    Distribution of Student Activity Fees to student organizations is governed by the Student Activity Fee Guidelines.

62.    A true and correct copy of the Student Activity Fee Guidelines is attached as Exhibit 1.

63.    On information and belief, the Student Activity Fee Guidelines were adopted and implemented by the Office of Student Life under the authority and supervision of Defendant Bales.

64.    The Student Activity Fee Guidelines prohibit the distribution of student fees to "[a]ny Organization which engages in activities, advocacy, or speech in order to advance a particular political interest, religion, religious faith, or ideology."

10

65.     The Student Activity Fee Guidelines prohibit the distribution of student fees for "[a]ny program or activity which involves the advancement of a particular religion, or religious faith or ideology."

66.     The Student Activity Fee Guidelines on use and distribution of funding apply to both the organization that applies for funding and any distribution of funds by an organization that receives funding.

67.     The Student Activity Fee Guidelines do not include an exhaustive list of objective criteria, factors, or standards to guide Defendants in allocating mandatory Student Activity Fees to fund expressive activity in a viewpoint neutral manner.

68.     The Student Activity Fee Guidelines do not include a definition of "political interest."

69.     The Student Activity Fee Guidelines do not include a definition of "religion."

70.     The Student Activity Fee Guidelines do not include a definition of "religious faith."

71.     The Student Activity Fee Guidelines do not include a definition of "ideology."

72.     The Student Activity Fee Guidelines do not provide for an appeals process if a student organization's request for funding is denied.

73.     The Student Activity Fee Guidelines' exclusion from funding eligibility for "[a]ny Organization which engages in activities, advocacy, or speech in order to advance a particular political interest, religion, religious faith, or ideology," disfavors political, religious, and ideological speech which is protected by the First Amendment.

74.     The Student Activity Fee Guidelines' exclusion from funding eligibility for "[a]ny Organization which engages in activities, advocacy, or speech in order to advance a particular political interest, religion, religious faith, or ideology," is facially viewpoint discriminatory.

**C.  Viewpoint discriminatory access barrier to distribution of Student Activity Fees**

75.     A student organization must be recognized by the Office of Student Life to be eligible to receive Student Activity Fees.

76.     Pursuant to the authority granted by the Board Defendants and Defendant Mearns, Defendant Bales directs the operations of the Office of Student Life and is responsible for enforcing its policies including the policy for recognition of student organizations.

77.     Defendant Bales, and/or those under her supervision, enforces the policies in the Student Organization Handbook.

78.     The Student Organization Handbook requires that in order to be eligible to be recognized, a proposed "organization's purpose must support the educational mission of the University and the Division of Student Affairs and Enrollment Services."

79.     The Student Organization Handbook requires that in order to be eligible to be recognized, a proposed organization's purpose must not duplicate that of an existing recognized student organization.

80.     Defendants do not maintain an exhaustive list of objective, content and/or viewpoint neutral criteria by which to determine when an organization is eligible to become a registered student organization.

81.     Thus, because registered organization status serves as a gateway barrier to access to the forum for speech created by the Student Activity Fee Policy, Defendant Bales, and/or those under her supervision, have unbridled discretion to exclude groups from receiving Student Activity Fee funding by denying an organization registered status.

**D. The unequal treatment of student organizations in distribution of Student Activity Fees**

82.     Committee Defendants are members of the "Student Activity Fee Committee" and are responsible, under the Student Activity Fee Guidelines, for allocating student fees among the various student organizations recognized by the University.

83.     The Student Activity Fee Committee is comprised of (1) the president of the Student Government Association; (2) one student appointed by the Student Government Association; and, (3) one representative each from Student Affairs and Enrollment Services Budget Office, Student Affairs and Enrollment Services, and Academic Affairs.

84.     Defendants have not published the Student Activity Fee Guidelines on any publicly accessible website.

85.     On information and belief, it is not common knowledge among student organizations that the Student Activity Fee Committee exists or that organizations may apply for Student Activity Fee funding directly from the Student Activity Fee Committee.

86.     The 2017-2018 Ball State University Student Organization Handbook does not inform student organizations that there is any way to apply for funding from the Student Activity Fee Committee.

87.     Orientation sessions held for student organizations did not inform them that they were eligible to apply for Student Activity Fee funding directly from the Student Activity Fee Committee.

88.     The Student Organization Handbook states that "[t]here are a small number of student-led organizations that are provided with professional staff advisors and funding from the University."

89.     The Student Organization Handbook is published by the Office of Student Life under the supervision and control of Defendant Bales.

90.     Committee Defendants, the Student Activity Fee Committee, directly fund only twelve out of over four hundred student organizations.

91.     Those organizations directly funded by the Student Activity Fee Committee in the 2017-2018 academic year were (1) Asian American Student Association, (2) Black Student Association, (3) Dance Marathon, (4)  Alliance for Disability Awareness (Disabled Students in Action), (5) Latinx Student Union, (6)  Spectrum, (7) Student Government Association, (8)  Student Leadership Development Board, (9) Student Legal Services, (10) Student Voluntary Services,  (11) University Program Board, and (12) Late Nite (collectively referred to as the "Favored Student Organizations").

92.     On information and belief, Defendants do not post a notice for any Student Activity Fee Committee meetings.

93.     On information and belief, Defendants do not make recordings of the Student Activity Fee Committee meeting deliberations publicly available to the university community.

94.     In order to access Student Activity Fee funding, all student organizations, other than the Favored Student Organizations, are directed to apply for a co-sponsorship from one of the Favored Student Organizations directly funded by the Student Activity Fee Committee.

95.     All funding allocated by the Committee Defendants, including co-sponsorships by the Favored Student Organizations, is subject to the Student Activity Fee Guidelines.

96.     Plaintiffs only became aware of the existence of the Student Activity Fee Guidelines and Committee when the guidelines were forwarded to them as the basis for a denial of funding from the Student Government Association Small Organization Fund.

97.     Committee Defendants periodically review the use of the allocations by the Student Government Association to ensure that the allocations comply with the Student Activity Fee Guidelines.

98.     Defendant Bales has reviewed the use of the allocations by the Student Government Association to ensure that the allocations comply with the Student Activity Fee Guidelines.

99.     On information and belief, the Student Activity Fee Policy may be amended or revoked, in whole or in part, by Defendant Mearns as President of the University or by the Board Defendants.

**II.     Defendants applied the Student Activity Fee Policy to deny funding to Students for Life at BSU, which is viewpoint discriminatory.**

100.     On or about February 4, 2018, Students for Life at BSU submitted an application for funding from the Student Government Association Small Student Organization Fund to fund its Pregnant on Campus resource initiative and other educational activities.

101.     Students for Life at BSU sought $300 to design and distribute educational resource material for pregnant and parenting students at Ball State University.

102.     The Student Government Association Small Student Organization Fund is funded by mandatory student activity fees that are distributed to the Student Government Association by the Student Activity Fee Committee.

103.     Defendants require that the Student Government Association distribute the funds it receives from the Student Activity Fee Committee in accord with the requirements of the Student Activity Fee Guidelines.

104.     On information and belief, Students for Life at BSU's application for funding was forwarded to Defendant Bales on or before February 12, 2018.

105.     Defendant Bales is the staff advisor for the Student Government Association.

106.    On information and belief, Defendant Bales directed or advised that Students for Life at BSU's application for funding be denied because Defendant Bales or individuals under her direction determined that Students for Life at BSU advocates for pro-life viewpoints.

107.    On or about February 19, 2018, Students for Life at BSU was informed that its application for funding was denied.

108.    Students for Life at BSU's application for funding was denied because Students for Life at BSU advocates for pro-life views.

109.    Students for Life at BSU is similarly situated to student organizations that are funded by student activity fees in all relevant aspects except Students for Life at BSU's pro-life viewpoint.

110.    The Student Activity Fee Committee and the Favored Student Organizations that it funds (including the Student Government Association) distribute funds under the Student Activity Fee Guidelines to student organizations that advocate for specific viewpoints, including viewpoints that Plaintiffs Ms. Weis, Ms. Harding, and Ms. Hopf disagree with and do not wish to fund.

111.    The Student Activity Fee Committee and the Favored Student Organizations it funds (including the Student Government Association) distribute funds under the Student Activity Fee Guidelines to some, but not all, student organizations that advocate for political viewpoints.

112.    On information and belief, Feminists for Action received Student Activity Fee funding to advocate for its viewpoints including the use of abortion and abortifacients.

113.    Feminists for Action hosted an event entitled "Stand with Planned Parenthood Rally."

114.    The "Stand with Planned Parenthood Rally" hosted by Feminists for Action included lobbying congressional members to fund Planned Parenthood.

115.    Plaintiffs Ms. Weis, Ms. Harding, and Ms. Hopf object to the messages expressed by Feminists for Action and oppose the use of their student activity fees for the promotion of Feminist for Action's viewpoints.

116.    The Student Activity Fee Committee and the Favored Student Organizations it funds (including the Student Government Association) distribute funds under the Student Activity Fee Guidelines to some, but not all, student organizations that advocate for religious viewpoints.

117.    The Secular Student Alliance at Ball State received Student Activity Fees to fund its viewpoints on religion.

118.    The Secular Student Alliance at Ball State hosts events such as "God is Dead: Life without Religion."

119.    Plaintiffs Ms. Weis, Ms. Harding, and Ms. Hopf object to the messages expressed by the Secular Student Alliance at Ball State and oppose the use of their student activity fees for the promotion of the Secular Student Alliance at Ball State's viewpoints.

120.    The Student Activity Fee Committee and the Favored Student Organizations it funds (including the Student Government Association) distribute funds under the Student Activity Fee Guidelines to some, but not all, student organizations that advocate for ideological viewpoints.

121.    The Student Activity Fee Committee funds Spectrum, a group which advocates for the social affirmation of lesbian, gay, bisexual, trans, queer, and questioning lifestyles.

122.    Plaintiffs Ms. Weis, Ms. Harding, and Ms. Hopf object to some of the messages expressed by Spectrum and oppose the use of their student activity fees for the promotion of Spectrum's viewpoints.

123.     Defendants have excluded Students for Life at BSU and its pro-life viewpoint from receiving funding from the Student Activity Fees paid by each individual plaintiff and the other members of Students for Life at BSU.

124.     Because Defendants denied Students for Life at BSU's request to fund the educational and Pregnant on Campus initiatives, Students for Life at BSU was required to expend $289.45 to fund the event.

## CLAIMS

125.     All of the acts of Defendants, their officers, agents, employees, and servants, were executed and are continuing to be executed by Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Indiana.

126.     The Committee Defendants act under color of state law when carrying out their duties and functions, including allocating Student Activity Fees, delegated to them by the other Defendants pursuant to the Student Activity Fee Policy.

127.     Defendants are not engaging in government speech or their own speech in their allocation of mandatory Student Activity Fees.

128.     Defendants knew or should have known that by forcing the individual plaintiffs to pay into a viewpoint discriminatory Student Activity Fee system and by denying Students for Life at BSU's application for funding from the Student Activity Fees, Defendants violated Plaintiffs' constitutional rights.

129.     The Student Activity Fee Policy which Defendants applied to violate Plaintiffs' constitutional rights remains in full force and effect.

130.     Plaintiffs are suffering irreparable harm from the Student Activity Fee Policy and conduct of Defendants, which cannot be fully compensated by an award of money damages.

131.    Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

132.    Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest.

133.    Defendants have deprived, and continue to deprive, Plaintiffs of their clearly established rights under the United States Constitution, as set forth in the causes of action below.

134.    Unless the conduct of Defendants is enjoined, Plaintiffs will continue to suffer irreparable injury.

135.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to appropriate relief invalidating Defendants' Student Activity Fee Policy, along with the related practices and procedures.

## COUNT I –Violation of Plaintiffs' First Amendment Right to Freedom of Speech: Compelled Speech and Viewpoint Discrimination

136.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–135 of this Complaint.

137.    The First Amendment's Freedom of Speech Clause prohibits the government from compelling citizens to express or support a message not of their own choosing.

### A.    Viewpoint Discrimination

138.    The First Amendment's Freedom of Speech Clause prohibits public universities from collecting a mandatory Student Activity Fee that is used to fund student organization speech if that mandatory Student Activity Fee is not allocated in a viewpoint neutral manner.

139.    Allocation of funds are not viewpoint neutral if they are not governed by a list of exhaustive and objective criteria that limit the decision maker's discretion to discriminate based on viewpoint or if they are actually allocated in a viewpoint discriminatory manner.

140.    The Student Organization Handbook is facially viewpoint discriminatory against viewpoints that the University determines do not "support the educational mission of the University and the Division of Student Affairs and Enrollment Services."

141.    The Student Organization Handbook is facially viewpoint discriminatory against viewpoints that the University determines duplicate that of an existing recognized student organization.

142.    Defendants do not maintain an exhaustive list of objective, content and/or viewpoint neutral criteria by which to determine when an organization is eligible to become a registered student organization.

143.    The Student Organization Handbook serves as a gateway barrier to access to the forum for speech created by the Student Activity Fee Policy, and Defendants have unbridled discretion to exclude groups from receiving Student Activity Fee funding by denying an organization registered status.

144.    The Student Activity Fee Policy is facially viewpoint discriminatory against religious, political, and ideological viewpoints.

145.    The Student Activity Fee Policy is facially viewpoint discriminatory because it does not contain exhaustive and objective criteria to limit the discretion of Defendants when distributing student activity fees.

146.    Defendants have applied the Student Activity Fee Policy in a viewpoint discriminatory manner by funding some expression by organizations that engage in political, religious, or ideological expression, but refusing to fund Students for Life at BSU's educational event by claiming it is political, religious, or ideological.

147.    The First Amendment's Freedom of Speech Clause prohibits viewpoint discrimination in a public forum created for student speech.

148.    When a public university collects mandatory Student Activity Fees and allows registered student organizations to apply for Student Activity Fee funding, or otherwise makes funds available to student groups to foster a diversity of viewpoints, it creates a public forum for student speech and expression.

149.    The government is not speaking when it allows registered student organizations promoting a multiplicity of views to apply for funding, whether through Student Activity Fees or otherwise. Instead, it creates a public forum for student speech and expression.

150.    The funds that a public university collects through a mandatory Student Activity Fee and uses to fund student organizations do not constitute government funds.

151.    The government's ability to restrict speech in a public forum is limited.

152.    A public university may not apply viewpoint-based standards in allocating student organization funding, including through mandatory Student Activity Fees.

153.    Defendants have created a public forum for student speech through their Student Activity Fee Policy.

154.    Through the Student Activity Fee Policy, Defendants compel the individual Plaintiffs, the other members of Plaintiff Students for Life at BSU, and all University students to pay a mandatory Student Activity Fee that is used in part to fund student organization speech on campus pursuant to a viewpoint-discriminatory policy.

155.    Defendants' Student Activity Fee Policy facially discriminates based on viewpoint.

B.     **Unbridled Discretion**

156.    Defendants' Student Activity Fee Policy confers unbridled discretion on Defendants or other government officials charged with allocating those funds to suppress and/or discriminate against disfavored speech based on viewpoint.

157.    The lack of objective criteria, factors, or standards for determining who may access a student organization funding forum gives government officials unbridled discretion to exclude or prohibit speech based on its viewpoint in violation of the First Amendment.

158.    The lack of the publication of the Student Activity Fee Guidelines indicates that the government has unbridled discretion to govern the speech forum.

159.    The lack of advanced notice for meetings, public meetings, and recording of meetings of Defendants charged with allocating student organization funding indicates that the government has unbridled discretion to govern the speech forum.

160.    The lack of an appeals process in a student organization funding forum indicates that the government has unbridled discretion to govern the speech forum.

161.    Defendants' Student Activity Fee Policy confers unbridled discretion on Defendants or other government officials charged with allocating those funds to suppress and/or discriminate against disfavored speech because of its viewpoint.

162.    Defendants' Student Activity Fee Policy grants Defendants unbridled discretion to promote or create special student organizations that advocate for Defendants' favored viewpoints, and to favor those viewpoints over the viewpoints of all other student organizations.

163.    Defendants' Student Activity Fee Policy grants Defendants unbridled discretion to allow the Student Government Association and other funded student organizations, to favor certain

viewpoints over others by co-sponsoring the events of certain student organizations but declining to co-sponsor events of other disfavored student organizations.

164.    Defendants' policies governing the allocation of funds, including the Student Activity Fee Policy, do not provide that Student Activity Fee Committee meetings be announced in advance to the public, be open to the public, or be recorded.

165.    Defendants' policies governing the allocation of funds, including the Student Activity Fee Policy, do not provide student organizations with the ability to appeal student organization funding decisions by the Defendants.

166.    Defendants have exercised the unbridled discretion granted them to deny Plaintiff Students for Life at BSU the opportunity to receive mandatory Student Activity Fees for an educational event, but they still force students, including individual Plaintiffs and members of Plaintiff Students for Life at BSU, to support other student organizations' educational and advocacy events and viewpoints through the mandatory Student Activity Fee—including viewpoints that Plaintiffs do not wish to fund.

### C.    Content Discrimination

167.    Defendants' Student Activity Fee Policy compels the individual Plaintiffs and the student members of Plaintiff Students for Life at BSU to fund and support speech and viewpoints with which they disagree and which they find offensive and objectionable.

168.    Pursuant to the Student Activity Fee Policy, Defendants engaged in content- and viewpoint-based discrimination by favoring the expressive activities of other student organizations such as the Favored Students Organizations, Feminist for Action, Student Government Association, Spectrum, and Secular Students Association, but not providing Plaintiff Students for Life at BSU with the same treatment.

23

169.     Defendants have no legitimate interest to support by favoring the speech of other student organizations and disfavoring the speech of Plaintiff Students for Life at BSU.

170.     Accordingly, Defendants' Student Activity Fee Policy and their enforcement against Plaintiffs, violates Plaintiffs' right to freedom of speech guaranteed by the First Amendment.

171.     Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. They are entitled to an award of monetary damages and equitable relief.

172.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment right to freedom of speech and an injunction against Defendants' policy and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**COUNT II – Violation of Plaintiffs Right to Equal Protection of the Laws**

173.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–135 of this Complaint.

174.     The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the equal protection of the laws, which prohibits Defendants from treating Plaintiffs differently than similarly situated speakers or associations.

175.     The government may not treat a person or association of persons disparately as compared to similarly situated persons or associations when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

176.     Plaintiff Students for Life at BSU and its members are similarly situated to other registered student organizations at the University that engage in speech or advocacy.

177. Defendants treat Plaintiff Students for Life at BSU and its members differently than other similarly situated speakers on campus by denying Plaintiff Students for Life at BSU and its members access to speech forums that similarly situated associations and students may access, such as the Favored Student Organizations, Feminist for Action, Student Government Association, Spectrum, and Secular Students Association.

178. Defendants' policies and actions disadvantage Plaintiff and its members by limiting their ability to speak on an equal basis as other similarly situated associations and students.

179. Defendants' policies and actions have caused Plaintiff and its members actual damages.

180. Defendants' policies and actions violate Plaintiff's and its members' fundamental right to free speech.

181. When government regulations, like Defendants' policies and actions, infringe on fundamental rights, discriminatory intent is presumed.

182. Defendants lack a rational or compelling state interest for such disparate treatment of Plaintiff and its members.

183. Because of Defendants' actions, Plaintiff and its members have suffered, and continue to suffer, economic injury and irreparable harm. Plaintiff is entitled to an award of monetary damages and equitable relief.

184. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its Fourteenth Amendment right to equal protection and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

(A)    A declaratory judgment that Defendants' Student Organization Handbook's student organization recognition requirements facially violates Plaintiffs' rights under the First Amendment;

(B)    A declaratory judgment that Defendants' Student Activity Fee Policy, facially and as-applied, violates Plaintiffs' rights under the First and Fourteenth Amendments;

(C)    A declaratory judgment that Defendants' denial of Student Activity Fee funding to Plaintiff Students for Life at BSU violated Plaintiffs' rights under the First and Fourteenth Amendments;

(D)    A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf, from enforcing the Student Activity Fee Policy and the portions of the Student Organization Handbook challenged in this complaint;

(E)    Actual compensatory damages in the amount of $289.45 for infringing Plaintiff Students for Life at BSU's exercise of its First and Fourteenth Amendment rights;

(F)    Actual compensatory damages in the amount of mandatory Student Activity Fees paid by each of Plaintiff Students for Life at BSU's student members, including individual Plaintiffs, that were collected pursuant to a viewpoint-discriminatory policy that infringed Plaintiffs' First Amendment rights;

(G)    Nominal damages for the violation of Plaintiffs' First and Fourteenth Amendment rights;

(H)     Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this

action pursuant to 42 U.S.C. § 1988; and

(I)     All other further relief to which Plaintiffs may be entitled.

Dated this 13th day of June, 2018.                    Respectfully submitted,

                                                      */s/ Eric C. Bohnet*
                                                      _____
J. Caleb Dalton*                                      Eric C. Bohnet
VA Bar # 83790                                        IN Bar # 24761-84
ALLIANCE DEFENDING FREEDOM                            6617 Southern Cross Dr.
440 First Street NW, Suite 600                         Indianapolis, IN 46237
Washington, D.C. 20001                                Telephone: (317) 750-8503
Telephone: (202) 393-8690                             Email: ebohnet@gmail.com
Fax: (202) 347-3622
Email: cdalton@ADFlegal.org


Tyson Langhofer*                                      Dave Cortman*
AZ Bar # 032589                                       GA Bar # 188810
ALLIANCE DEFENDING FREEDOM                            ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street                                  1000 Hurricane Shoals Road NE
Scottsdale, AZ 85260                                  Suite D-1100
Telephone: (480) 444-0020                             Lawrenceville, GA 30043
Fax: (480) 444-0028                                   Telephone: (770) 339-0774
Email: tlanghofer@ADFlegal.org                        Fax: (770) 339-6744
                                                      Email: dcortman@ADFlegal.org

                                                      *Counsel for Plaintiffs*

                                                      *\*Pro Hac Vice Motions forthcoming*

## VERIFICATION OF COMPLAINT

I, Julia Weis, a citizen of the United States and a resident of the State of _Illinois_ ,

hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing

Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct

to the best of my knowledge.

Executed this _6th_ day of June, 2018, at _12:15_ , _pm_ .

_Julia Weis_
Julia Weis, on behalf of myself individually, and as an
authorized representative of Students for Life at BSU at Ball
State University

28

I, Renee Harding, a citizen of the United States and a resident of the State of _Indiana_ ,

hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing

Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct

to the best of my knowledge.

Executed this __12ᵗʰ__ day of June, 2018, at __Leo__ , __Indiana__.

_[signature]_

Renee Harding

## VERIFICATION OF COMPLAINT

I, Nora Hopf, a citizen of the United States and a resident of the State of _Indiana_ ,

hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing

Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct

to the best of my knowledge.

Executed this _10th_ day of June, 2018, at _Fishers_ , _Indiana_ .


_Nora Hopf_

Nora Hopf